## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAKOTA CLAY AHLGRIM,

      Plaintiff,

      v.                             No. CIV 12-1017 WPJ/CEG

LEONARD MANZANARES, in his
Individual capacity,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Plaintiff's *Civil Rights Complaint*

*Pursuant to 42 U.S.C. § 1983* ("Complaint"), filed September 28, 2012, (Doc. 1);

Defendant Leonard Manzanares' *Answer*, filed July 19, 2013, (Doc. 16); *Defendant's*

Martinez *Report* ("*Martinez* Report"), filed January 27, 2014, (Doc. 30); *Plaintiff's*

*Response to Defendant's* Martinez *Report* ("Response"), filed February 16, 2014, (Doc.

31); *Defendant's Reply to Plaintiff's Response to* Martinez *Report (Doc. 31)* ("Reply"),

filed March 6, 2014, (Doc. 32); Plaintiff's *Motion for Summary Judgment* ("Surreply"), filed

March 19, 2014, (Doc. 33)[1]; and *Defendant's Response to Plaintiff's Motion for Summary*

*Judgment [Doc. 33]* filed April 1, 2014, (Doc. 34). This case has been referred to the

undersigned by the Honorable William P. Johnson, United States District Judge, for

---

[1] Defendant asks the Court to construe Plaintiff's *Motion for Summary Judgment* as a surreply, and strike it for being improperly filed without leave of Court. (Doc. 34). Petitioner is a *pro se* litigant. His pleadings must be construed liberally and held to a less stringent standard than is required of a party represented by counsel. *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . ." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). The Court has reviewed the filing and will construe it as a surreply to the *Martinez* Report, and not as a Motion for Summary Judgment pursuant to FED.R.CIV.P. 56. The Court will grant Plaintiff leave to file that document as a surreply pursuant to D.N.M.LR-Civ. 7.4(b).

analysis and a recommended disposition. (Doc. 35).

Plaintiff is an inmate incarcerated at the Penitentiary of New Mexico ("PNM") in Santa Fe, New Mexico. Plaintiff claims that Defendant Leonard Manzanares, a former Housing Unit Manager at PNM, violated his due process rights under the Fourteenth Amendment while Plaintiff was placed in Level VI disciplinary segregation at PNM.[2] (Doc. 1 at 3). Specifically, Plaintiff claims that he was deprived of his personal property and privileges without a hearing. (Doc. 1 at 3). After considering the parties' filings and the relevant law, the Court recommends that Plaintiff's Complaint be dismissed without prejudice.

## I.   Background

Between May and July 2012, Plaintiff wrote and mailed various letters to Judge Sandra Price, the state district judge that presided over the criminal proceedings that resulted in Plaintiff's current incarceration. (Doc. 1 at 3; Doc. 30-6 at 20–38). A staff attorney at the state district court submitted the letters to PNM authorities on July 5 and July 10, 2012 for investigation and prosecution, because she and Judge Price perceived the letters to be threatening in nature. (Doc. 30-6 at 14, 20, 25).

Plaintiff alleges that on July 11, 2012, he was punished by Defendant because of the letters he wrote to Judge Price, and that Defendant deprived him of certain personal property, privileges, recreation time, and good time credits. (Doc. 1 at 2–3). Defendant concedes that on July 11, 2012, he regressed Plaintiff from disciplinary segregation Step

---

[2] Plaintiff's Complaint asserts due process, negligence, and double jeopardy claims against Gregg Marcantel and Defendant Manzanares in their official and individual capacities. (Doc. 1 at 1–2). Judge Johnson dismissed the double jeopardy and negligence claims in the *Memorandum Opinion and Order* entered February 13, 2013. (Doc. 11 at 3). He also dismissed Defendant Manzanares in his official capacity, and Mr. Marcantel in all capacities, from the lawsuit. (Doc. 11 at 3).

2 category, to disciplinary segregation Step 1 category, because of the letters Plaintiff wrote to Judge Price. (Doc. 30 at 2). Defendant explains that regression to Step 1 of Level VI disciplinary segregation automatically results in the removal of certain personal property items from the inmate's cell and reduction of certain privileges. (Doc. 30 at 2) (citing Doc. 30-4 at 2–11, 82–86).

Plaintiff also alleges that approximately two days later, he was punished by Defendant for writing a letter to his caseworker, which Defendant deemed to constitute sexual harassment. (Doc. 30 at 3). Plaintiff was allegedly deprived of two days of recreation time for writing the letter to the caseworker. (Doc. 1 at 3).

On July 16, 2012, Plaintiff was given notice that the New Mexico Corrections Department ("NMCD") would be proceeding against him in a "major level hearing" to address the letters he wrote to Judge Price. (Doc. 30-6 at 13). The hearing was held before Michelle Boyer, an Inmate Grievance Officer at PNM, on July 24, 2012. (Doc. 30-6 at 9–11). During the disciplinary hearing, Plaintiff argued that he had not intended the letters to be threatening, and contended that the investigating officer and Ms. Boyer had violated various policies and procedures in proceeding against him. (Doc. 30-6 at 9–11). On August 16, 2012, Plaintiff was found guilty of two major-level misconduct violations, and sanctioned with continued confinement in disciplinary segregation for 210 additional days, and the loss of all of his good time credit. (Doc. 30-6 at 8–11).

Plaintiff appealed the disciplinary decision to the Warden, on the bases that he had not received a fair hearing, was actually innocent, and his punishment was excessive because Defendant had already disciplined him by regressing him to Step 1. (Doc. 30-6

at 4–7). His appeal was denied by the Warden on August 31, 2012. (Doc. 30-6 at 3). On September 28, 2012, Plaintiff filed the Complaint.

## II.    Plaintiff's Due Process Claim

Plaintiff alleges that his Fourteenth Amendment due process rights have been violated "a countless number of times" while incarcerated at PNM. (Doc. 1 at 2). Plaintiff alleges that on or around July 11 and 13, 2012, Defendant deprived him of "clothing, bedding, religious, and legal materials, personal property, recreation, privileges, and good time credits", without first affording him a "fair hearing" by way of the prison's disciplinary hearing process. (Doc. 1 at 2, 3). Plaintiff also alleges that Defendant utilized prison policies and procedures to bypass due process requirements, for the reason that decisions made under those prison policies and procedures are "inevitable and not appealable." (Doc. 1 at 2). For relief, Plaintiff seeks a declaratory judgment, punitive damages, court costs, an injunction, and release to a Level 3, 2, or 1 prison facility. (Doc. 1 at 5).

Defendant moves to dismiss the Complaint for Plaintiff's failure to state a claim under FED.R.CIV.P. 12(b)(6), and because he is entitled to qualified immunity. Defendant also alleges that Plaintiff failed to properly exhaust his administrative remedies pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, because he failed to follow the NMCD's grievance procedure before seeking judicial relief. (Doc. 30 at 5). Defendant submitted affidavits and other evidentiary material with his *Martinez* Report in support of his argument. Plaintiff argues that he has fulfilled the PLRA's exhaustion requirement, because he followed the proper grievance procedure that was available to

him before filing this lawsuit.

### III.      Standard of Review

A *Martinez* report may be used in a variety of contexts, including motions for summary judgment. When a *Martinez* report is used for summary judgment purposes, the *pro se* Plaintiff must be afforded an opportunity to present conflicting evidence to controvert the facts set out in the report. *Hall*, 935 F.2d at 1109.

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The movant bears the burden of making a prima facie demonstration that there is no genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670–71 (10th Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

If the moving party has demonstrated an absence of material fact, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587(1986) (internal quotations omitted). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The non-movant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995). To accomplish this, the

facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See Adler*, 144 F.3d at 670–71.

## IV.    Analysis

The PLRA requires an inmate to exhaust all available administrative remedies before filing a lawsuit related to prison conditions. 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and unexhausted claims cannot be successfully asserted in federal court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). To properly exhaust administrative remedies an inmate must comply with "the administrative review process in accordance with the applicable procedural rules," including deadlines, as defined by the prison grievance process. *Id.* at 218.

Failure to exhaust pursuant to PLRA is an affirmative defense, and therefore the burden of demonstrating that Plaintiff has not exhausted his administrative remedies lies with Defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Defendant must prove that: (1) administrative remedies were available to the inmate, and (2) the inmate failed to exhaust those remedies. *Purkey v. CCA Det. Ctr.*, No. 06-3389, 263 Fed. Appx. 723, 726 (10th Cir. Feb. 5, 2008) (unpublished).

### A.    NMCD's Inmate Grievance Process

Defendant provided the Court with the New Mexico Corrections Department's policies and procedures that establish the grievance system for prisoners seeking to challenge the conditions of their confinement. (*See* Inmate Grievances, CD-150500/01, (Jan. 25, 2012) (Doc. 30-3 at 1–22)).

Initially, an NMCD prisoner should seek to resolve any grievance or particular area

of concern by informally discussing the matter with the appropriate staff member responsible for the incident. (Doc. 30-3 at 9). If the matter is not resolved, the inmate must complete a three-step written grievance process. First, the inmate fills out and files an Inmate Informal Complaint Form, provided in the appendices of the grievance policy, within five calendar days from the date of the incident giving rise to the complaint. (Doc. 30-3 at 9, 19). The Inmate Informal Complaint Form should be addressed to the Unit Manager or his designee. (Doc. 30-3 at 9).

If the informal complaint goes unresolved, then the inmate must file a written formal grievance by completing an Inmate Grievance Form, within 20 calendar days of the date giving rise to the complaint. (Doc. 30-3 at 9, 16–17). The Inmate Grievance Form should be submitted to the prison's Grievance Officer. (Doc. 30-3 at 9). The inmate should also attach a copy of the unresolved informal complaint to the Inmate Grievance Form. (Doc. 30-3 at 9). The Grievance Officer will acknowledge receipt of the written formal grievance, conduct an investigation, and complete and deliver his report and recommendation to the Warden within 20 working days. (Doc. 30-3 at 12). The Warden will then review the grievance and the Grievance Officer's findings, and make a written decision on the grievance within 15 working days. (Doc. 30-3 at 12–13).

The inmate may appeal the Warden's unfavorable decision to the Office of the Secretary of Corrections, by completing the appeal portion of the Inmate Grievance Form, within seven calendar days of receiving the Warden's decision. (Doc. 30-3 at 13). The Grievance Administrator will conduct any additional investigation and present a recommendation to the Secretary of Corrections or his designee within 25 days; the

Secretary of Corrections or his designee will then render a written decision within ten days. (Doc. 30-3 at 13). The ruling of the Secretary is the final decision on the grievance, and concludes the internal administrative remedies available to the inmate. (Doc. 30-3 at 13). The policy provides that no more than 90 days shall pass from the filing of a grievance to the final decision. (Doc. 30-3 at 7).

  B.   *Plaintiff Failed to Properly Engage in the Grievance Process*

Defendant claims that Plaintiff failed to follow the NMCD's grievance policy with respect to the July 11, 2012 incident, and therefore Plaintiff has not satisfied the PLRA's exhaustion requirement. (Doc. 30 at 8). Defendant demonstrates that to pursue remedies through the NMCD's grievance process, Plaintiff should have completed and filed the Inmate Informal Complaint Form on or by July 16, 2012. If that complaint was unsuccessful, then Plaintiff should have submitted an Inmate Grievance Form on or by July 31, 2012. At the last step, Plaintiff would have had to appeal to the Secretary of Corrections. Plaintiff would have also had to submit the correct forms to the proper prison official pursuant to the grievance policy at each step. Based on the 90-day deadline for final decision, the entire process would have been completed on or by October 15, 2012. Defendant reasons that because Plaintiff did not follow that procedure, that he failed to exhaust his administrative remedies.

Defendant put forth evidence demonstrating that Plaintiff did not follow the NMCD's grievance procedure. Defendant's *Martinez* Report includes the affidavit of Larry Phillips, the Grievance Appeals Coordinator for the NMCD. Mr. Phillips states that he reviewed the NMCD's Criminal Management Information System, and all inmate

grievance and discipline appeals records maintained by the NMCD. He states that between September 2011 and December 2012, Plaintiff only filed one appeal related to his right to personal property. (Doc. 30-1 at 8) (citing Doc. 30-1 at 10–22). However, that appeal was regarding Plaintiff's inability to order items through institutional canteens and approved vendors, and did not relate to the claim before the Court. (Doc. 30-1 at 10–22). Mr. Phillips also states that he found no records indicating that Plaintiff ever filed a grievance relating to any loss or taking of personal property or other privileges, against Defendant or any other prison employee, in July 2012. (Doc. 30-1 at 8–9).

Mr. Phillips also states that he located a copy of the Disciplinary Decision issued on August 16, 2012, and Plaintiff's subsequent appeal to the Warden. (Doc. 30-1 at 8) (citing Doc. 30-1 at 23–24; Doc. 30-6 at 8). Mr. Phillips claims that he reviewed the ecords and did not locate a copy of an appeal of the Disciplinary Decision to the Secretary of Corrections. (Doc. 30-1 at 8–9).

Plaintiff maintains that he exhausted all of his administrative remedies before filing this lawsuit. He alleges in the Complaint that he "filed informal complaint and grievance one after another, to which [he] never received an answer." (Doc. 1 at 5). In the same paragraph, he also states that he did receive an answer to one of his complaints, but that "the copy has since been 'misplaced' after a shakedown." (Doc. 1 at 5). He states that he subsequently wrote a letter to Division Director Jerry Roark, but that Mr. Roark referred him back to Ken Smith, the Deputy Warden. (Doc. 1 at 5).

Plaintiff attached a copy of his letter to Mr. Roark dated August 12, 2012, which is file-stamped as received by the North Unit Deputy Warden's Office on August 23, 2012.

9

(Doc. 1, Ex. A at 3–4). In that letter, Plaintiff made substantially the same complaints currently before the Court, and informed Mr. Roark that he had previously filed an informal complaint with Mr. Smith that was denied. (Doc. 1 at 9). Plaintiff explained to the Court that he "attempted to file a grievance shortly before he wrote the letter to Central on the issues at hand, but never received any acknowledgment of receipt of it, nor an answer." (Doc. 31 at 3). Plaintiff also attached to the Complaint the response he received to his August 12, 2012 letter to Mr. Roark. Unit Manager Roberta Lucero-Ortega wrote the response to Plaintiff on August 28, 2012 and explained the reasons why she determined that the punishment by Defendant was not excessive. (Doc. 1, Ex. A at 1–2).

Plaintiff contends that he attempted to file various informal and formal complaints, but that he never received acknowledgments or answers to his complaints. He also implies that in the one instance he received a response, his copy of the document was tampered with by prison officials in a shakedown. Plaintiff does not articulate any specific information regarding his alleged informal and formal grievances. For example, he does not state where, when, or to whom he submitted them, and fails to support his allegations with any facts.

He also suggests that the prison's failure to respond to his informal and formal grievances rendered him unable to satisfy the procedural requirements of the grievance policy. However, the grievance procedure specifically allows a grievant to move on to the next level for review upon "[e]xpiration of a time limit at any stage without a decision." (Doc. 30-3 at 7). Under this provision, an inmate is clearly permitted to move on to the next level even if he has not received a response to his grievance at the previous level.

Even if the Court was to take Plaintiff's assertions that he filed several informal and formal

grievances as true, Plaintiff could have, and should have, completed the final step of the

grievance procedure and appealed to the Secretary of Corrections. Based on the 90-day

grievance process deadline, if Plaintiff had properly followed the grievance procedure, a

final decision would have been issued by the Secretary on or by October 15, 2012.

Defendant has put forth conclusive evidence, showing that Plaintiff did not file a timely

appeal to the Secretary of Corrections, as dictated by the prison policy. Plaintiff has not

responded with any argument or evidence otherwise.

> C.    *Disciplinary Proceeding Not the Exclusive Available Administrative Remedy*

Plaintiff also argues that his exclusive administrative remedy was the disciplinary

proceeding and subsequent appeals process. (Doc. 33 at 1), He points out that the

grievance policy specifically precludes grievances concerning disciplinary procedures,

because a separate appeal process is provided to inmates for disciplinary actions. (Doc.

33 at 1) (citing Doc. 30-3 at 6). He also claims that the NMCD's grievance process was

not available to him because his property was confiscated, and not lost or damaged.

(Doc. 33 at 1) (citing Doc. 30-3 at 5–6).

Plaintiff contends that his appeal of the final disciplinary decision by Ms. Boyer was

proof that he exhausted his administrative remedies. (Doc. 31 at 3). He claims that the

denial of his appeal of the disciplinary decision by the Warden was the final administrative

remedy available to him, and was not grievable beyond that point. (Doc. 31 at 3) (citing

(Doc. 30-3 at 6)). However, the sole issue Plaintiff has presented to the Court is whether

Defendant violated Plaintiff's due process rights by depriving him of his personal property

and privileges without the benefit of a disciplinary hearing. The disciplinary proceeding

before Ms. Boyer concerned whether Plaintiff was guilty of the alleged major-level

misconduct, and if so, what punishment was proper. The disciplinary proceeding did not

consider the prison's policy regarding pre-hearing deprivation of personal property and

privileges of inmates in disciplinary segregation.

Throughout the disciplinary proceeding and subsequent appeal, Plaintiff argued

that the disciplinary hearing itself was rife with error. (Doc. 30 at 8; Doc. 30-6 at 41–42).

The only mention of Defendant or Plaintiff's pre-hearing deprivation of property and

privileges was made in the appeal. In that appeal, Plaintiff argued that his punishment

was excessive because he had already been disciplined by Defendant without a fair

hearing, in violation of his due process rights and the prohibition against double jeopardy.

(Doc. 30-6 at 6–7). However, Plaintiff's double jeopardy claim against Defendant has

already been dismissed by Judge Johnson. (Doc. 11). Further, an argument related to the

amount of punishment imposed by the Warden is not relevant to the due process claim

presented in this case. Therefore, the Court finds that Plaintiff did not properly exhaust his

due process claim through his appeal of the Warden's disciplinary decision.

The Court also cannot agree with Plaintiff's narrow interpretation of the NMCD's

grievance policy that confiscated property is not grievable through the NMCD grievance

process. The grievance policy provides that the following matters are reserved for

resolution through the NMCD's grievance process:

> [t]he substance, interpretation and application of policies, rules and procedures of
> the institution or Department including . . decisions regarding . . . lost property . . .
> [i]ndividual employee actions . . . and [a]ny other matter relating to conditions of
> care or supervision within the authority of the [NMCD] . . . .

12

(Doc. 30-3 at 5–6). The process also provides that successful inmates may be rewarded with restoration or replacement of lost or damaged personal property, or a change of prison policies, procedures, or practices. (Doc. 30-3 at 7). The Court interprets the grievance policy broadly, to encompass inmate complaints of the prison's policies, rules, and procedures as to decisions regarding property, whether it be lost, damaged, or confiscated. Thus, the Court finds that Plaintiff could have employed the NMCD's grievance procedure to complain about his pre-hearing property and privilege deprivation. (Doc. 34 at 3).

> D.      *Claim for Loss of Recreation Time is Also Unexhausted*

The Court also finds that Plaintiff failed to exhaust his administrative remedies with respect to his allegation that, on or around July 13, 2012, Defendant improperly deprived Plaintiff of two recreation days for writing an inappropriate letter to his caseworker. Defendant raised the affirmative defense of failure to exhaust, and provided the Court with the affidavit of Mr. Phillips stating that he "found no records of inmate Ahlgrim having ever filed a grievance relating to any loss or taking of . . . privileges by [Defendant] or any other NMCD employee in July 2012." (Doc. 30-1 at 9). Plaintiff was given an opportunity to demonstrate that he exhausted all of his administrative remedies as to all of the factual allegations in this case, but did not respond with any arguments or evidence that he utilized the grievance procedure for the alleged loss of his recreation time. Therefore, the Court concludes that, regarding the alleged incident resulting in the loss of recreation time, Plaintiff also failed to exhaust his administrative remedies.

## V.     Conclusion

The record demonstrates that Plaintiff has not adhered to the requirements of the available grievance process, because he did not properly complete all three required written grievance steps. Therefore, Plaintiff has not complied with the mandatory exhaustion rule, and is barred from pursuing his due process claim against Defendant.

The Court should dismiss a claim without prejudice if it finds that it has not been properly exhausted pursuant to the PLRA. *See Wilson v. Bezona*, No. 12-1078, 485 Fed. Appx. 976, 978 (10th Cir. Oct. 10, 2012) (unpublished). In this case, the Court has determined that Plaintiff's due process claim is unexhausted, and recommends the Complaint be dismissed in its entirety without prejudice.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983*, (Doc. 1), be **DISMISSED WITHOUT PREJUDICE**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE